## Banton v. Wall's Administrator.

(Decided October 5, 1926.)

### Appeal from Logan Circuit Court.

1. Executors and Administrators—Claim Consisting of Note Signed by Decedent and Wife, Attached to which was Check Drawn by Claimant in Favor of Decedent for Amount of Note, Held Properly Allowed Against Decedent's Estate (Ky. Stats., Section 3870).—Claim, consisting of note signed by decedent and his wife, attached to which was check drawn by claimant in favor of decedent for amount of note, and claim being verified as required by Ky. Stats., section 3870, held to make prima facie case for claimant, and to be properly allowed against decedent's estate.

2. Executors and Administrators—Claim Consisting of Oral Promises to Repay Claimant for Money Loaned Deceased, Barred by Limitations Some Time Before Decedent's Death, Held Properly Disallowed Against Estate.—Claim for money lent decedent on his oral promise to repay same, barred by five-year statute of limitation some time before decedent's death, and evidence not showing that, after they were barred, decedent recognized debts and promised to pay them, held properly disallowed against decedent's estate.

3. Executors and Administrators—Claims Consisting of Decedent's Oral Promises to Pay Claimant Money Loaned by Him to Decedent, and Represented by Checks Drawn by Claimant in Decedent's Favor, Held Properly Allowed Against Decedent's Estate. —Claims, consisting of decedent's oral promises to pay to claimant money lent by him to decedent on different occasions, and represented by checks drawn by claimant in favor of deceased against claimant's account with bank, and claim being verified in accordance with statute, held properly allowed against decedent's estate.

4. Executors and Administrators—Claims on Sums Expended by Claimant in Making Repairs and Paying for Labor on Decedent's Farm, Not Being Barred by Limitation, Held Properly Allowed Against Decedent's Estate (Ky. Stats., Section 3870).—Claims consisting of decedent's implied promise to repay to claimant sums expended by him in paying for repairs and labor on decedent's farm, which claimant was not required to make, and

claim not being barred by limitation, and verifying affidavit being in accordance with Ky. Stats., section 3870, held properly allowed against decedent's estate.

5. Executors and Administrators.—Proving affidavit of additional witness to claim asserted against decedent's estate held insufficient, in view of Ky. Stats., section 3870, where it did not state that affiant believed claim to be just and correct, or state his reasons for so believing.

6. Executors and Administrators.—Evidence held insufficient to establish prima facie case for claimant on claim against decedent's estate, based on decedent's purchase of half interest in disk tractor plow, and balance due claimant from decedent on roan mare sold to him.

7. Executors and Administrators.—Evidence held to make prima facie case entitling claimant to recover against decedent's estate for services in managing and overseeing farm for decedent for the five years next previous to decedent's death.

8. Landlord and Tenant—Purchase and Payment for Supplies in Full Used in Cultivation of Farm by Tenant, Under Agreement to Furnish One-half Thereof, Created Indebtedness in Tenant's Favor Against Landlord.—If contract under which tenant cultivated farm provided that he should furnish one-half of supplies necessary to cultivation, and that landlord should furnish the other half, purchase and payment for supplies in full by tenant, created an indebtedness in his favor against landlord.

9. Executors and Administrators—Claims Based on Operation of Farm Under Contract Requiring Claimant and Decedent to Pay One-half of Cost of Supplies Used Therein Held Properly Disallowed Against Decedent's Estate.—Claims against decedent's estate, based on supplies purchased and used in cultivation of farm by claimant for decedent, under contract by which each was to pay one-half of cost of same, held, in view of evidence, properly disallowed against decedent's estate.

R. W. DAVIS for appellant.

O. M. SMITH and COLEMAN TAYLOR for appellee.

Opinion of the Court by Commissioner Sandidge— Reversing.

In an action by his administrator to settle the estate of M. M. Wall, deceased, appellant, W. W. Banton, filed eight claims aggregating $5,290.28, which were allowed by the master commissioner of the circuit court, to whom the action was referred for settlement. Exceptions were filed by the administrator and responses by the claimant putting in issue each item of each of the claims. Upon the trial below the chancellor awarded appellant a judg-

ment for claims Nos. 1, 3 and 6, crediting claim No. 3 by $500.00, and disallowed all of the others. This appeal has been prosecuted by claimant, W. W. Banton, from the judgment disallowing such of the claims as were disallowed, and from that part of the judgment crediting claim No. 3 with a payment of $500.00, and appellees, Wall's administrator and heirs, have prosecuted a cross-appeal from that part of the judgment allowing claims Nos. 1, 3 and 6.

Claim No. 1 consisted of a promissory note for $300.00, dated April 11, 1921, due four months after date, signed by decedent, M. M. Wall, and his wife, Julia Jane Wall, attached to which was a check drawn by claimant, W. W. Banton, in favor of M. M. Wall on the Bank of Allensville for the amount of the note. The claim was verified by the affidavit of the claimant, as is required by section 3870, Kentucky Statutes, to the effect that it was just and had never been paid, and that there was no offset or discount against same and no usury therein. In that state of case, certainly a *prima facie* case was made for claimant, and no evidence whatever was produced tending to establish that the note had been paid. Therefore, the chancellor properly allowed claim No. 1 with interest.

By claim No. 2 appellant sought to recover of decedent's estate $155.48 for money lent by him to decedent upon his oral promise to repay same. Attached to the claim are two of appellant's checks, one payable to M. M. Wall for $45.00 dated June 20, 1914, the other payable to W. E. Hornberger, deputy sheriff, for $110.48, dated September 12, 1916. The evidence establishes that the $45.00 check was for money lent by appellant to Wall, and that the check for $110.48 settled a judgment debt against Wall for which the deputy sheriff then had in his hands an execution. Wall appears to have died the latter part of November, 1922. These oral agreements to pay money were barred by the five years statute of limitation some time before the death of Wall. We have examined carefully the evidence found in the record offered as tending to establish that after they were so barred decedent recognized the debts and promised to pay them, but find that it falls far short of what is required under the rule in question. We find in the record no evidence of an

express acknowledgment of these particular debts nor any promise, express or implied, to pay same. Consequently, the chancellor properly disallowed claim No. 2.

By claim No. 3 appellant sought to recover from decedent's estate $766.10 upon decedent's several oral promises to pay him that aggregate amount of money lent by claimant to him on seven different occasions. Attached to the claim were seven checks drawn by appellant in favor of deceased, M. M. Wall, against appellant's account with the Bank of Allensville. Appellant's verification of the claim is in accord with the section of our statutes, *supra,* on the question. The checks with which Banton furnished Wall the sums of money going to make up this claim were dated July 23rd and September 11th and 24th, 1918, and July 3rd, August 27th, October 23rd, and November 20th, 1920, respectively. It appears that appellant, Banton, is unable to write his name and these checks of his and his name signed to them were written by another. The proof in the record from those who signed Banton's name to these checks establishes that on the respective occasions deceased, Wall, borrowed from claimant, Banton, the sums of money represented by them, and promised to repay same, and some of the checks themselves state in their face that they were for borrowed money. Under these facts we can but hold, as did the chancellor, that claimant made a case for himself authorizing a judgment for the $766.10 sought to be recovered by claim No. 3. Our careful reading of the depositions for appellees as tending to show payment of these sums of money leaves us with the conclusion that it is not sufficient to upset the case for appellant. The evidence for appellees, its weight and effect introduced as tending to establish that if decedent ever owed claimant any money on account of the various claims filed herein it was paid by him before his death will be discussed later herein. For the reasons indicated, this court is of the opinion that the chancellor properly allowed claim No. 3, with interest. The correctness or erroneousness of the chancellor's conclusion that this claim should be credited by $500.00 will be discussed later in the opinion.

Claims Nos. 4 and 8 are of such nature that they may be treated jointly and will be disposed of after considering claims Nos. 5, 6 and 7.

By claim No. 5, consisting of 24 items aggregating $127.49, appellant sought to recover from decedent's estate that sum upon an implied promise upon the part of decedent to repay him the various sums of money aggregating the total above paid by appellant for decedent. All save the first three, aggregating $14.60, were paid more than five years before decedent's death, and consequently were barred by the five years statute of limitation. There is no evidence in the record tending to establish that after they were barred decedent ever expressly recognized any of these debts or either expressly or impliedly promised to pay them. Consequently, as to all of them the chancellor's judgment disallowing the claim is proper. As to the three items not barred by limitation, claimant's verifying affidavit is in accordance with the section, *supra*, of our statute on the question, and the proof for him establishes that on December 9, 1920, he purchased and paid for window sash used in repairing one of the houses on deceased's farm, and that on October 8, 1919, he paid for sawing lumber that was used in repairing one of the buildings on deceased's farm, and that on November 4, 1918, he paid to Alex Carter for making boards used to cover the smokehouse on deceased's farm. Their contract did not require appellant to furnish these repairs. In that state of case, the court is of the opinion that appellant made a *prima facie* case as to the three items aggregating $14.60, and that the proof for appellees was not sufficient to upset the case so made. On claim No. 5 the chancellor erred in not allowing appellant a judgment for $14.60, with interest.

By claim No. 6 appellant sought to recover from the estate of M. M. Wall, deceased, $150.00 for a half interest in a disc tractor plow which he and Wall owned jointly, his half interest in which Wall purchased, and for which he agreed to pay appellant; and the further sum of $30.00 balance due appellant from Wall on a roan mare sold to him. It is extremely doubtful if the affidavit of the claimant on the original claim is sufficient under the section, *supra*, of our statutes. It is certainly true that the proving affidavit of the additional witness, this not being a claim on an obligation signed by the decedent, is insufficient in that it does not state, as the statute requires, that the affiant believes the claim to be just and correct or state his reasons for so believing. The only testimony

relative to this claim that we have found in the record is the following from the deposition of George Banton, a son of the claimant, W. W. Banton:

> "Here's claim No. 6, for one-half amount paid on disc plow, know anything about that plow, in January or February, 1922? A. Yes, sir, I brought it there. Q. Where from? A. Springfield. Q. Where was it bought? A. From Qualls & Klein's garage. Q. Who paid for it? A. Pappy and Mr. Mose each paid one-half for the plow. Q. What became of that plow? A. Carried it from down there up here to this place and they sold it, plow and disk both. Q. One-half belong to your father? A. Yes, sir. Q. Ever been paid for it? A. No, sir. Q. I notice in 1919, balance due on mare sold to Mr. Wall, $30.00, you know anything about that? A. Yes, sir. Q. Is that the balance due on the mare or the total? A. That's the balance due, I guess. Q. Was that mare sold and delivered to Mr. Wall? A. Yes, sir. Q. Ever pay your father for it? A. Not that I know of."

From that testimony it appears that when the disc plow was bought each of them paid for one-half of it. The witness states that it was carried "from down there up here to this place and they sold it." He further stated that it has never been paid for. Who "they" were who sold the plow does not appear, and for aught that appears it may be the purchaser who has never paid for it and that claimant has his claim against the purchaser for his part of the disc plow. It will be observed that the witness' testimony as to the transaction about the roan mare is entirely too vague and indefinite to be made the foundation of a judgment. The evidence for appellant and the defective verifying affidavits are not sufficient to establish a *prima facie* case for him on this claim. On appellant's counterclaim we have concluded that claim No. 6 for $180.00 should not have been allowed.

By claim No. 7 appellant sought to recover from decedent's estate $1,600.00 for services rendered by him as overseer of a 700 acre farm owned by decedent near Keysburg, in Logan county, Kentucky, for the years 1915, 1916, 1917, 1918, 1919, 1920, 1921, and 1922, at $200.00 per year, under a verbal agreement between them for the services and at the price. This claim was disal-

lowed by the chancellor. It may be said at the outset that that part of the claim sought to be collected for services for the years 1915, 1916, and 1917 was barred by limitation at the time of the death of M. M. Wall, and may be eliminated from further consideration, since no evidence tending to establish an express recognition of this debt or an expressed or implied promise to pay it after it was barred may be found in the record. The evidence found in the record abundantly establishes that during the last five years before the death of M. M. Wall, appellant W. W. Banton, had general charge and supervision of a large and valuable farm owned by decedent at Keysburg, Kentucky. He appears to have lived in the residence on that farm and each year to have cultivated a portion of it under an agreement whereby the farm products were divided between him and deceased, M. M. Wall. Other tenants appear to have cultivated other portions of the farm and claimant appears to have acted as overseer and manager of the entire farm. That Banton did act as overseer and manager of this large and valuable farm is established by the testimony of a number of his neighbors who lived near and upon the farm in question; and that his services in so doing were worth $200.00 per year. The deposition of Mrs. Katie King, a wholly disinterested witness, is found in the record, which discloses that in a conversation had between her and Wall within two or three months before his death, wherein they were discussing her problems arising out of the ownership of a farm near that owned by Wall at Keysburg, he advised her that she should get a good man to run her farm for her like he had done as to his Keysburg farm, and stated that he had had Mr. Banton employed to run his farm for him for a long time.

Under these facts disclosed by the record, we are of the opinion that appellant made a *prima facie* case entitling him to recover for his services in managing and overseeing the Keysburg farm for the five years next previous to Wall's death. We find no satisfactory evidence in the record tending to show payment of this claim, as will more fully appear hereinafter.

By claims No. 4 and 8 appellant sought to recover from the estate of M. M. Wall, deceased, $1,123.63. These two claims together set forth 98 items aggregating $2,247.25. The claim is upon the theory that those items

were for supplies purchased and used in connection with the operation of and cultivation of that portion of the farm cultivated by appellant, and that under the contract each was to pay one-half of the cost of same. The entire cost, when purchased was paid by appellant, Banton, and he sought to recover from Wall's estate one-half of it. The checks with which appellant, Banton, paid for these 97 different items of supplies are filed in the record. We find that 45 of the total of 98 items going to make up claims 4 and 8 are barred by the five years statute of limitation, and nothing found in the record suggests any reason to the court that any other than the five year statute prevails as to these items. If, as appellant contends, the contract under which he cultivated a portion of the farm provided that he should furnish one-half of the various supplies necessary for the cultivation of the farm, and that decedent, Wall, should furnish the other half of them, and when the supplies were purchased appellant paid for them in full, when he purchased and paid for each lot of them an indebtedness in his favor and against his landlord, Wall, immediately arose either upon the latter's express of implied promise to repay. Nothing in the record operated to take these demands against Wall as they arose out of the operation of the statute of limitation, and 45 of these claims so arising were barred by limitation before the death of Wall. We have carefully considered this voluminous record as it relates to this large number of causes of action between the parties, and have concluded that the chancellor properly disallowed claims Nos. 4 and 8 entirely. The record establishes that frequently appellant, Banton, himself disposed of the crops which he and his landlord owned jointly as a result of the cultivation of the farm and collected the proceeds, and subsequently would settle with Wall on that account. Frequently Wall himself disposed of the crops and would account to appellant for his portion of same. The same thing was true with reference to stock to which they fed the crops when they were put upon the market. It does not seem at all to accord with reason and with common business dealing, judgment and sense that, as the years went by, upon a division of the proceeds of the crops raised upon the farm, if Wall was indebted to Banton for his half of fertilizer, seed, threshing bills, feed, and the numerous other items of expense included within

the claims under consideration, Banton would not have reqiured at his hands a settlement, especially since Banton himself frequently disposed of the crops and collected the entire proceeds. Besides some direct evidence found in the record tends to establish that as the crops were marketed settlements were made between the parties on account of the expenses incident thereto. It seems wholly incredible that through these years the tenant could have carried his landlord and become his debtor to an aggregate amount in excess of $5,000.00. A careful consideration of this record and all the evidence found therein relating to the 98 different causes of action in favor of appellant and against the estate of the decedent has left this court with the clear opinion that the chancellor properly rejected both of these claims.

It can readily be understood that it is impossible in an opinion to discuss each of the items of the various accounts which are really separate causes of action, the number of which are indicated herein. The record is exceedingly voluminous and involved. We have considered with due care the evidence for appellees tending to establish that when he died Wall did not owe anything to appellant, Banton. The testimony from the administrator and the two appraisers as to the conversation had with appellant on the day the appraisement of deceased's personal property was made is wholly consonant with his testimony that he understood that they were merely ascertaining from him what of the personal property there belonged to Wall, what belonged to him, and what of it belonged to them jointly. The administrator's statement that he understood what they said to constitute a full and final settlement on account of any claims appellant might have against the estate of Wall is not supported by what he testified they said. He could hardly have been undertaking to make such a settlement because he knew that any claims in favor of Banton could not be paid until verified as required by the statute, *supra*. Another witness testified that Banton told him after Wall's death that Wall did not owe him anything. Banton denied that. Still another testifying for appellees stated that Banton told him that Wall owed him the $300.00 note and nothing else. Banton denied that. The three conversations relied on by appellees are shown to have been at approximately the same time. It doesn't seem

that Banton would have told in the two instances that Wall's estate owed him nothing and in the other that he had the note against it. The record abundantly establishes that Wall was not a good voluntary paymaster. Though possessed of much property it discloses that he frequently had to be sued and judgments against him enforced by execution. Scores of claims aggregating many thousand dollars have been filed and allowed herein to which no question has been raised. The record as a whole, when considered carefully and dispassionately, in the light of the legal principles involved, has led this court to the conclusions above.

The record discloses that on March 20, 1919, M. M. Wall gave appellant a check for $500.00, which he collected. Appellant could make no explanation as to what it was for though asked to do so by attorney for appellee. Under the peculiar facts of this record and in view of the fact that we have allowed appellant's claim for $766.10, money lent to deceased on his oral promise to pay, and his claim for services in managing the farm at $200.00 per year for the last five years of deceased's life, much more than $500.00 indebtedness having accrued on these claims before the date of the check, we conclude that the chancellor properly directed that appellant's claims be credited by the $500.00 as of the date paid.

For the reasons indicated the judgment is reversed and the cause remanded, with direction that judgment be entered in conformity herewith.